## Grow, etc., v. Milk Control Commission

*Elmer E. Harter*, of *Daniels & Harter*, and *Carroll L. Rutter*, for appellant.

*William F. Schutte*, Deputy Attorney General, and *Paul P. Wisler*, for Milk Control Commission.

KNIGHT, P. J., September 28, 1944.—This is an appeal by Wesley Grow, trading as Clover Leaf Dairy (hereinafter referred to as "appellant"), from an order of the Milk Control Commission of the Commonwealth of Pennsylvania (hereinafter referred to as the "Commission"), filed on August 9, 1943, and amended May 3, 1944, whereby the commission, pursuant to a citation duly issued and served, refused to issue to appellant a dealer's license for the year May 1, 1943, to April 30, 1944, and revoked appellant's right to apply for a license for the year May 1, 1944, to April 30, 1945. Such action of the commission was based upon its conclusion that appellant had failed to account and make payment for milk purchased and received from producers during the period from July 1, 1940, to April 30, 1941, in accordance with the commission's orders, to the extent of $705.03.

It should be pointed out that a previous citation covering the same alleged violation by appellant had been disposed of by the commission in an order on February 3, 1943, in which it refused to grant appellant a license. This order was appealed to this court to February term, 1943, no. 136, in due course, but for some reason was never presented to the court for disposition. In passing, it may be stated that this delay was not due to any neglect or inadvertence of the court; the only explanation appearing in the record is found in the statement of one of the attorneys engaged that the parties were not ready to have the matter adjudicated. The testimony produced upon the hearing of the first citation is made the basis of the order involved in the present appeal.

The charge that appellant has been guilty of underpayments to producers grows out of the fact that appellant, while a dealer, is the owner of two herds of cows. The milk produced by these herds is distributed by appellant to consumers, but it is not pooled with other milk received from other producers in determin-

ing its utilization. Rather, appellant places all milk produced by his own herds in class 1, which commands the highest price. The natural result of this practice by appellant is that a lower percentage of the milk purchased from other producers is used in class 1, and this in turn results in a lower financial return to such other producers.

Appellant contends that this practice is justifiable in that it is only natural that a man will obtain the highest possible price for milk he himself produces before he will purchase milk from others for resale to consumers. On the other hand, the commission contends that such practice is improper; that appellant should not favor himself over producers from whom he purchases or receives milk; and that, by virtue of the orders of the commission, he should pool his own milk with that of other producers before determining its utilization.

In support of its contention, the commission points to its own order as controlling and cites section 11 of Official General Order no. B-1, which reads, in part, as follows:

"Method of Determining Payment to Producers. Dealers shall be responsible to producers for payment on a weight and butter fat basis and as determined by the utilization of the aggregate of milk received at each plant or receiving station during the period covered by the payment . . ."

To understand the background of this order, some knowledge of the method used as between producers' and dealers in receiving, utilizing, and paying for milk is necessary. As explained to us, the producer delivers his milk to the dealer, who utilizes as much as he needs or can dispose of in class 1, and the milk that he cannot utilize in class 1 he disposes of as class 2, 3, or 4, to be used for making ice cream, butter, cheese, etc. When a producer sells his milk to a dealer, he does not know what he is to receive for it, as the price paid by the

dealer depends upon what utilization he makes of the milk.

The practical and economic reason and justification for this rather one-sided arrangement can be found in the opinions of our Supreme Court in Colteryahn Sanitary Dairy v. Milk Control Commission of Pennsylvania, 332 Pa. 15, and Rohrer v. Milk Control Board, 322 Pa. 257.

In order to protect the producers, who are to a considerable extent at the mercy of the dealer in the matter of the price the former shall receive for their milk, the legislature has given the commission power to make reasonable rules to carry out the purposes of the Milk Control Law of April 28, 1937, P. L. 417, as amended. One of these rules is the order above quoted.

Appellant does not question the reasonableness of this order, nor could it be questioned in this court. He argues it does not apply to him because he cannot receive his own milk—he already has it.

Appellant, so far as the milk produced from his herd is concerned, occupies a dual position; he is a producer, and he is a dealer. When he receives the milk, he receives it in his capacity of a dealer and it is then subject to the rules applying to dealers. The practice of appellant of putting the milk that he produces in the highest price class admittedly results in lower prices to the other producers from whom he purchases milk. This is unfair to the other producers. Appellant, as a dealer, has the right to classify the milk he receives according to its utilization, but in doing so he must conform to the rules which apply to dealers. Appellant relies on section 7 of order B-1, which reads:

"Basis for Determining Utilization. The percentage on which all producers shall be paid by each dealer for each grade or class of milk shall be that percentage of the total amount of butterfat in the milk purchased from producers which is marketed or disposed of in each grade or class by such dealer."

Appellant points to the word "purchaser" and contends that the milk from his own herds is not purchased by him. This argument overlooks the dual capacity of appellant as a producer and a dealer. As a dealer he purchases the milk from himself as a producer and pays himself for it.

We are of the opinion that section 11 of Official Order no. B-1, quoted above, contemplates that a dealer must treat the producers from whom he receives milk without preference or discrimination, and that as a dealer he must treat milk produced by his own herds in the same way he treats the milk he receives from other producers.

Judge Evans of the Court of Common Pleas of Erie County in the case of McGarvey, etc., v. Milk Control Commission, 26 Erie 114, in a well-considered opinion, arrives at the same conclusion as we have on the question above discussed. The commission based its citation of July 16, 1943 (the foundation of this appeal), on the same alleged violations contained in its citation of June 1, 1942. On the latter citation, the commission, after hearings, entered its order of February 5, 1943, which was appealed to this court and which appeal has never been disposed of.

"Appellant contends that until such time as the first appeal is adjudicated the commission is precluded from considering the alleged violations a second time and using them again as a basis for further punitive action against appellant." (Appellant's brief.)

It will be noted that the first citation (June 1, 1942), called upon appellant to show cause why the commission should not refuse to grant or suspend the granting of his milk dealer's license for the year May 1, 1942, to April 30, 1943. The last citation (July 16, 1943) concerns the license year from May 1, 1943, to April 30, 1944, and his right to apply for a license for the year May 1, 1944, to April 30, 1945.

Section 406 of the Milk Control Law of April 28, 1937, P. L. 417, provides:

"Cancellation.—Where the commission declines to grant a license to an applicant, or revokes a license, and the dealer appeals therefrom, obtaining a supersedeas, the reason assigned for declining to grant or for revoking the license shall not be a reason for declining to grant the same dealer a license for a subsequent license period."

In the petition of appeal from the order of February 5, 1943, petitioner (appellant) prays that the appeal may be made a supersedeas and offers to enter a bond in the sum of $1,500 if a supersedeas was granted. The petition was not brought to the attention of the court, the supersedeas was never granted, and the bond was not entered. Since no supersedeas was granted, the commission could enforce its order of February 5, 1943, and we are of the opinion it could use the same violation as a basis for its citation of July 16, 1943, which pertains to subsequent years.

In addition, the same fundamental questions are involved in both appeals, and we feel it better to decide the case on its merits.

"Mere technical irregularities in the procedure of the commission shall not be the basis of the decision of the court": section 906 of the Milk Control Act, supra.

The citations above noted charge a failure of the dealer to account and make payment for milk purchased and received from milk producers during the period from July 1, 1940, to and including April 30, 1941.

At the hearing, an audit of appellant's books made by the commission was produced. This audit covered a longer period than that set forth in the citation. The following is an extract from the record pertaining to the admission of this audit in evidence (page 5 of notes of meeting of June 9, 1942):

"Mr. Schutte: Mr. Examiner, this exhibit covers a larger period than is set forth in the citation and I wish only to offer that portion of the exhibit covered by the citation. When I offer them in evidence I will

exclude the portion of the exhibit that goes beyond the citation."

"Mr. Shepard: Do the work sheets include more than the citation?

"Mr. Schutte: Yes.

"Mr. Harter: No objection, provided those irrelevant sheets are excluded from the offer.

"Mr. Shepard: They will be excluded."

At page 13 of the notes, counsel for appellant reversed his position, but those portions of the audit not covered by the citation were excluded by the examiner. We are of the opinion that the ruling of the examiner was correct.

Appellant was charged with underpayments between certain dates, and the evidence was properly confined to this period. If the commission were to introduce evidence of underpayments at times outside the citation period, appellant would have been the first to object and properly so. Since the entire audit was not before the commission, that body could not make findings of fact based thereon. Appellant argues that, if the whole audit were considered, it would show overpayments in excess of the underpayments found by the commission to exist during the citation period, and these overpayments, so contends appellant, should be credited against underpayments.

We cannot agree with this. The Milk Control Act, sec. 803, authorizes the commission to fix by official order the minimum prices to be paid by milk dealers to producers. General Order B-1, sections 11, 12, and 13, provides that payment by dealers to producers shall be made on a monthly basis. The act, as we read it, does not give the commission authority to fix a maximum price to be paid by dealers to producers for their milk, nor, so far as we have been informed, has the commission established any such maximum price. There is nothing, then, to prevent a dealer from paying more than the minimum price for milk he receives from a producer.

It seems obvious to us that such voluntary overpayments cannot be set off against established underpayments. Of course, if the overpayments were made by inadvertence or mistake, a different situation would be presented, but there is no finding of the commission showing overpayments, nor does the record disclose why the overpayments were made. The commission has found as a fact that the underpayments during the citation period amount to $705.03, and there was evidence to support this finding.

It follows that the appeal must be dismissed.

And now, September 28, 1944, the appeal is dismissed, at the cost of appellant.